KAREN MATTESON, Cal. Bar No. 102103
Email: mattesonk@sec.gov
DONALD W. SEARLES, Cal. Bar No. 135705
Email: searlesd@sec.gov
JANET E. MOSER, Cal. Bar No. 199171
Email: moserj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
John M. McCoy III, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone:(323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>RAN H. FURMAN,<br><br>Defendant. | Case No.  08cv1620-WQH-RBB<br><br>**SUPPLEMENTAL JURY INSTRUCTIONS PROPOSED BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION** |

1    Plaintiff Securities and Exchange Commission respectfully submits the attached proposed

2  supplemental jury instructions.  The supplemental instructions are numbered to indicate where

3  they should be inserted into the Joint Proposed Instructions submitted by the parties, if adopted

4  by the Court.  For example, the Commission proposes that Supplemental Preliminary Instruction

5  1.1 be inserted after Joint Preliminary Instruction 1, that 1.2 be inserted after 1.1, that

6  Supplemental During Trial Instruction 5.1 be inserted after Joint During Trial Instruction 5, and

7  so forth.

8

9  DATED: December 10, 2010                    Respectfully submitted,

10

11                                              /s/Karen Matteson
                                                Karen Matteson
12                                              Attorney for Plaintiff
                                                Securities and Exchange Commission
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY INSTRUCTION NO. 1.1**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

From September 2003 to January 2005, Defendant Ran H. Furman was the Chief Financial Officer of Island Pacific, Inc., which was a publicly traded company whose shares traded on the American Stock Exchange.  During the period in question, Island Pacific developed and sold software to the retail industry.

Plaintiff SEC claims that Defendant Furman committed a financial fraud on the investing public by fraudulently manipulating the revenues of Island Pacific during the years 2003 and 2004.  Furman did so by improperly booking in the second quarter a $3.9 million sale of software to an Australian start-up company, QQQ Systems Pty Limited, and then improperly recording in the third quarter an offsetting transaction, which eliminated a $3.9 million receivable from QQQ. The SEC alleges that as a result of improperly recognizing and reporting the $3.9 million as revenue, Island Pacific overstated its second quarter revenues by 140%, its third quarter revenues by 29%, and its annual revenues by 22%.

The SEC also alleges that Furman caused Island Pacific's false revenues to be reported to the investing public in Island Pacific's earnings releases, in company conference calls with analysts about the company's financial results, and in Island Pacific's filings with the SEC, and omitted to disclose material facts concerning the transactions.

Based on the alleged conduct, the SEC claims that Furman violated the antifraud provisions of the federal securities laws and aided and abetted Island Pacific's violations of the reporting provisions of the federal securities laws.  The SEC further claims that Defendant Furman falsely certified Island Pacific's second and third quarter filings with the SEC.

Plaintiff SEC has the burden on proof on these claims.

Defendant Ran H. Furman denies these claims.  Ran H. Furman contends that:

(1)     Furman never made any false or misleading statements.

- 2 -

(2)    Furman did not have the state of mind necessary to support any of the plaintiff's claims -- He did not act with scienter or recklessly.

(3)    Island Pacific's recognition of revenue regarding the License Agreement and Sublicense Agreement complied with SOP 97-2.

(4)    Furman cannot be liable for aiding and abetting where no underlying violation occurred and, even if it did, Furman had no knowledge of any such violation.

(5)    Furman did not falsely certify Island Pacific's second and third quarter Forms 10-Q based upon his knowledge and beliefs at the time he made such certifications.

**Authority for Preliminary Instruction No. 1.1**

Manual of Model Civil Jury Instructions for the Ninth Circuit, 2007 Edition, Section 1.2 (modified to include description of parties' claims).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY INSTRUCTION NO. 1.2**

**STATUTORY PURPOSE**

Plaintiff SEC's claims in this case are asserted under the Securities Exchange Act of 1934.

The stock market crash of 1929 led to much legislation in the area of federal regulation. Included in this legislation was the Securities ~~Exchange~~ Act of ~~1933~~ 1934, and the creation of Plaintiff SEC.

~~Following enactment of the Securities Act of 1933 requiring full and fair disclosures relating to the offer of stock to the investing public,~~ Congress enacted the Securities Exchange Act of 1934 to ensure fair dealing and outlaw deceptive and inequitable practices by those selling or buying securities on the securities exchanges, over-the-counter markets or in face-to-face transactions.  Among the primary objectives of the Exchange Act are the maintenance of fair and honest security markets and the elimination of manipulative practices that tend to distort the fair and just price of stock.  The statute and rules enacted by the SEC are designed to support investor expectations that the securities markets are free from fraud and to prevent a wide variety of devices and schemes that are contrary to a climate of fair dealing.  Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity undermined the function and purpose of a free market.

In passing the securities laws, Congress allowed Plaintiff SEC to promulgate, in the public interest or for the protection of investors, rules and regulations prohibiting certain conduct in the offer, purchase or sale of securities.  These Rules have the effect of law and you should treat them as such.

**Authority for Preliminary Instruction 1.2**

4 L. Sand, *et al.*, Modern Federal Jury Instructions ¶ 82.01, Inst. 82-2 (Civil) (2010) (modified to delete references to the Securities Act of 1933).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY INSTRUCTION NO. 1.3

## SECURITIES -- DEFINITION OF RECURRING TERMS

Congress has enacted securities laws designed to protect the integrity of financial markets.  The plaintiff claims that the defendant violated the securities laws.  There are terms concerning securities laws that have a specific legal meaning.  The following definitions apply throughout these instructions, unless noted otherwise.

A security is an investment of money in a commercial, financial or other business enterprise, with the expectation of profit or other gain produced by the efforts of others.  Some common types of securities are stocks.

The buying and selling of securities is controlled by the Securities Laws. Many of these laws are administered by ~~the~~ Plaintiff United States Securities and Exchange Commission ("SEC" ).

A "10b-5 Claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue. A corresponding SEC Rule, Rule 10b-5, prohibits the misrepresentation of material facts and the omission of material facts in connection with the purchase or sale of securities.  ~~A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation.~~

A misrepresentation is a statement of material fact that is false or misleading when it is made.  A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.

An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading.

In connection with means that there was some nexus or relationship between the allegedly fraudulent conduct and the sale or purchase of the securities.

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone,

1 telegraph, telefax, interstate highway system, Internet and similar methods of communication and

2 travel from one state to another within the United States.

26 **Authority for Closing Instruction No. 1.3**

27 Manual of Model Civil Jury Instructions for the Ninth Circuit, 2007 Edition, Section 18.0

28 (modified to reflect only definitions applicable to the claims in this case).

**DURING TRIAL INSTRUCTION NO. 5.1**

**LAWYER INTERVIEWING WITNESS**

**(to be given where evidence regarding an attorney's meeting**

**with a witness has been the subject of trial testimony)**

It is proper for a lawyer to meet with any witness in preparation for trial.

**Authority for During Trial Instruction No. 5.1**

Seventh Circuit Federal Civil Jury Instructions (2009 rev.), Section 1.16.

- 7 -

**CLOSING INSTRUCTION NO. 3.1**

**FACTS THAT MUST BE TREATED AS ESTABLISHED**

The Court has determined that the following facts are established.  You should therefore treat these facts as having been proved.  These facts are:

1.    On February 4, 2004, Island Pacific's Contract Administrator Joe Dietzler wrote an email to Furman and other Island Pacific Employees.  The subject of Dietzler's email was "Revenue Recognition."

2.    Dietzler's February 4, 2004, email states:

I have continuing concern[] that certain transactions involving the company QQQ appear to be structured in a manner that is intended to inflate revenues for the purpose of boosting the corporation's share price.  The 'sale' to QQQ under the agreement entered into in late September 2003 creates such an appearance for the following reasons:

•       Substantial up-front fee for a distribution license, rather than a royalty stream

•       Revenue from the transaction comprises approximately 50% of the entire quarter's revenue

•       Entered into at the close of a quarter in which revenues would have been far short of estimates, if not for the single transaction with QQQ

•       Extended payment terms were granted

•       To date, no payments have been received and are well past due

Under another transaction, QQQ is selling product ownership and distribution rights to Island Pacific, and QQQ is to be compensated, in part, through debt forgiveness in amount roughly equal to the amount of the uncollected revenue that was recognized from the September sale to QQQ.  Irrespective of the legitimacy of the foregoing transactions, the totality of the surrounding circumstances creates the appearance that the transactions were intended merely to boost the reportable revenue of Island Pacific in the quarter ended September 30, 2003.  Further, the timing of the second QQQ transaction is in fact in the current quarter (ending March 31, 2004), as it substantially impacts the corporation's receivables.

To ensure compliance with financial reporting rules, it would seem

- 8 -

prudent that revenue recognition policies err on the conservative side so as to avoid even the appearance of irregularity.  Such practices will help ensure that the activities of the company do not precipitate potential allegations of improper accounting.  I believe the transactions involving QQQ should be restructured in a manner that makes each entirely independent of the other.  As payment has not [been] received for the September 30, 2003 sale, that situation should be dealt with in accordance with routine accounting standards.  I recommend that these transactions be given careful reconsideration by both senior management and the company's outside audit firm prior to release of any earnings report for the quarter ended December 31, 2003.

3.    Furman understood that in Dietzler's February 4, 2004 email, Dietzler was alleging there was a potential fraud.

4.    Dietzler's allegations in the February 4, 2004 email would have been material to the independent auditors.

5.    Dietzler's job title does not create an issue of fact as to materiality of the email or its contents.

6.    On February 12, 2003 and July 11, 2004, Furman signed management representation letters to Island Pacific's auditors, stating that he had "no knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, [or] former employees."

7.    Furman knew that Dietzler had alleged "potential fraud" with regard to the QQQ transactions, but Furman nevertheless represented to the auditors eight days later that he had no knowledge of any allegations of "suspected fraud . . . received in communications from employees [or] former employees."  This evidence warrants a judgment in the SEC's favor on its books and records claims against Furman and prevents application of the defense of reliance on professional assistance.

8.    By knowingly submitting false and/or misleading management representation letters to Island Pacific's auditors, Furman knowingly circumvented a system of internal accounting controls in violation of Section 13(b)(5) of the Securities Exchange Act of 1934.

9.    By signing management representation letters to Island Pacific's auditors, which

- 9 -

contained the false statement that Furman had "no knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, [or] former employees," Furman falsified a "record" in violation of SEC Rule 13b2-1.

10.     By signing management representation letters to Island Pacific auditors, which contained the materially false and/or misleading statement that Furman "had no knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, [or] former employees," Furman violated SEC Rule 13b2-2.

**Authority for Closing Instruction No. 3.1**

Fed. R. Civ. P. 56(d)(1); *see also Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir. 2009) (quoting Rule 56(d) & advisory committee's note) ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. . . ."); *Singh v. George Washington Univ. Sch. Of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("Facts found on partial summary judgment are taken as established at trial."); *Alberty-Velez v. Corporacion de P.R. Para la Diffusion Publica*, 242 F.3d 418, 422 (1st Cir. 2001) ("Facts specified [as uncontroverted at the summary judgment stage] 'shall be deemed established, and the trial shall be conducted accordingly.'"); *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1417 (5th Cir. 1993) (Rule 56(d) "provides that when some facts are preliminarily determined by virtue of partial summary judgment, 'upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.'").

- 10 -

## CLOSING INSTRUCTION NO. 10.1

### PARTIES WHO ARE NOT DEFENDANTS

You should not consider any claims or possible claims against persons or entities who are not defendants in this case.  You should not speculate as to why a person is not a defendant in the case.  You are to decide the case as to defendant <u>Furman</u> only.

### Authority for Closing Instruction No. 10.1

<u>Seventh Circuit Federal Civil Jury Instructions</u> (2009 rev.), Section 1.26 (modified).

1

2

3

4

**CLOSING INSTRUCTION NO. 10.2**

**SECTION 10(b) AND RULE 10b-5**

**ELEMENTS AND BURDEN OF PROOF**

5      Defendant <u>Furman</u> is alleged to have violated the antifraud provisions of Section 10(b) of

6   the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.  In order to meet its burden of

7   proof, the SEC must establish by a preponderance of the evidence each of the following

8   elements:

9      First, that defendant directly or indirectly did any one or more of the following fraudulent

10  acts:

11          (1)    employed a device, scheme, or artifice to defraud; or

12          (2)    made an untrue statement of a material fact or omitted to state a material

13                 fact which made what was said, under the circumstances, misleading; or

14          (3)    engaged in any act, practice, or course of business which operated or

15                 would operate as a fraud or deceit upon any person.

16      Second, that defendant's conduct was in connection with the purchase or sale of a

17  security.

18      Third, that defendant acted knowingly.

19      Fourth, that defendant used, or caused the use of an instrumentality of interstate

20  commerce, such as the mail or telephone, or a facility of a national securities exchange, in

21  connection with the purchase or sale of securities, regardless of whether the instrumentality or

22  facility was used to make an untrue statement or material omission.

23      If you find that each of the above elements on which the SEC has the burden of proof has

24  been proved as to the defendant, your verdict should be for the plaintiff.  If, on the other hand,

25  the SEC has failed to prove any of these elements, your verdict should be for the defendant.

26

27

28

1

<u>**Authority for Closing Instruction No. 10.2**</u>

2      4 L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u> ¶ 82.01, Inst. 82-3 (Civil) (2010)

3 (modified) (omitting references to reliance and injury, which the Commission need not show, *see*

4 *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363-1364 (9th Cir. 1993)); *see also* Manual of Model

5 Civil Jury Instructions for the Ninth Circuit, 2007 Edition, Section 18.1; *SEC v. Dain Rauscher,*

6 *Inc.*, 254 F.2d 852, 855-856 (9th Cir. 2001); Section 10(b) of the Exchange Act of 1934, 15

7 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -

1

## CLOSING INSTRUCTION NO. 10.3

2

### DEVICE, SCHEME OR ARTIFICE TO DEFRAUD -- DEFINITION

3

4      A device, scheme or artifice to defraud is merely a plan for the accomplishment of any

5    fraudulent objective.  Fraud is a general term which embraces all ingenious efforts and means

6    that individuals devise to take advantage of others.  The law which the defendants are alleged to

7    have violated prohibits all kinds of manipulative and deceptive acts.

8      The fraudulent or deceitful conduct alleged need not relate to the investment value of the

9    securities involved in this case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### Authority for Closing Instruction No. 10.3

27    _____Excerpted from 4 L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u> ¶ 82.02, Inst. 82-4

28    (Civil) (2010) (modified).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLOSING INSTRUCTION NO. 10.4

### MAKING A STATEMENT -- DEFINED

A corporate officer who signs a corporate document is deemed to have "made" the statements therein for the purposes of the anti-fraud provisions of the federal securities laws.

Even when a corporate officer does not sign a particular public filing, he or she may nonetheless be held responsible for making the statements continued therein where the officer substantially participated in the making of the public filing, or caused the false statement to be made and knew or had reason to know that the false statement would be disseminated to investors.

### Authority for Closing Instruction No. 10.4

*Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000); *SEC v. Stanard*, 2009 U.S. Dist. LEXIS 6068, *73-74 (S.D.N.Y. Jan. 27, 2009).

1

2

<u>**CLOSING INSTRUCTION NO. 11.1**</u>

**MATERIALITY -- ADDITIONAL DEFINITION**

3

4      In assessing whether a misstatement or omission is material, both quantitative and

5   qualitative factors should be considered. In assessing whether a stated or omitted fact is

6   quantitatively material, you should consider the financial magnitude of the misstatement or

7   omission.  Under this test, an omission or misstatement of an item in a financial report is material

8   if, in light of surrounding circumstances, the magnitude of the item is such that it is probable that

9   the judgment of a reasonable person relying upon the report would have been changed or

10  influenced by the inclusion or correction of the item.

11      In assessing whether a misstatement or omission is qualitatively material, you may

12  consider:

13      •      whether the misstatement masks a change in earnings or other

14            trends;

15      •      whether the misstatement hides a failure to meet analysts'

16            consensus expectations for the enterprise;

17      •      whether the misstatement changes a loss into income or vice versa;

18      •      whether the financial statements filed with the Securities and

19            Exchange Commission were not prepared in accordance with

20            generally accepted accounting principles;

21      •      whether management's integrity is placed into question by the

22            misstatement or omission;

23      •      whether the misstatement or omission caused the company to

24            restate its financials.

25      This is not an exhaustive list of the circumstances that may affect the materiality of a

26  quantitatively small misstatement. Among other factors, the demonstrated volatility of the price

27  of a registrant's securities in response to certain types of disclosures may provide guidance as to

28  whether investors regard quantitatively small misstatements as material. When management

expects (based, for example, on a pattern of market performance) that a known misstatement may result in a significant positive or negative market reaction, that expected reaction should be taken into account when considering whether a misstatement is material.

You should not assume that even small intentional misstatements in financial statements, for example those pursuant to actions to "manage" earnings, are immaterial. While the intent of management does not render a misstatement material, it may provide significant evidence of materiality. The evidence may be particularly compelling where management has intentionally misstated items in the financial statements to "manage" reported earnings. In that instance, it presumably has done so believing that the resulting amounts and trends would be significant to users of the registrant's financial statements.

Remember, in assessing materiality, you should consider all the relevant facts and circumstances, both quantitative and qualitative.  With respect to financial statements, qualitative factors may cause misstatements of quantitatively small amounts to be material.  Furthermore, you should consider both the individual misstatements or omissions, and their aggregate effect, in determining materiality.

1

**Authority for Closing Instruction No. 11.1**

2      SEC Staff Accounting Bulletin No. 99 ("SAB 99"); *Ganino v. Citizens Util.Co.*, 228 F.3d

3  154, 162-63 (2d Cir. 2000) (recognizing SAB 99 as persuasive authority on the definition of

4  materiality and noting that qualitative factors may cause misstatements of quantitatively small

5  amounts to be material); *In re Peritus Software Services, Inc. Sec. Litig.*, 52 F. Supp. 2d 211,

6  222-23 (D.Mass. 1999) (restatements are evidence of materiality); *United States v. Ferguson*,

7  553 F. Supp. 2d 145 (D. Conn. 2008); *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 829-30

8  (concerns that conduct at issue place into question management's integrity would be relevant in

9  assessing materiality); Regulation S-X, 17 C.F.R. §§ 210.1-02(a)(2), 249.308a ("financial

10  statements filed with the [SEC] which are not prepared in accordance with generally accepted

11  accounting principles will be presumed to be misleading or inaccurate, despite footnote or other

12  disclosures unless the Commission has otherwise provided…"); *SEC v. Murphy*, 626 F.2d 633,

13  653 (9th Cir. 1980) (materiality of information relating to financial condition, solvency and

14  profitability is not subject to serious challenge); *SEC v. Caserta*, 75 F. Supp. 2d 79, 90 & 92-93

15  (E.D.N.Y. 1999) (a statement made in violation of GAAP may be found to be misleading or

16  inaccurate under the federal securities laws; by their very nature, financial reports are relevant to

17  investment decisions).

18

19

20

21

22

23

24

25

26

27

28

1

## CLOSING INSTRUCTION NO. 11.2

2

### GENERALLY ACCEPTED ACCOUNTING PRINCIPLES ("GAAP") -- DEFINITION

3

4       Generally Accepted Accounting Principles, also referred to as GAAP, are simply the

5   conventions, rules and procedures that constitute the professional standards of the accounting

6   profession.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                  **Authority for Closing Instruction No. 11.2**

28       *United States v. Arthur Young & Co.*, 465 U.S. 805, 811 n.7 (1984).

- 19 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CLOSING INSTRUCTION NO. 11.3**</u>

**"IN CONNECTION WITH" -- DEFINITION**

"In connection with" the purchase or sale of a security means that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

<u>**Authority for Closing Instruction 11.3**</u>

Excerpted from 4 L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u> ¶ 82.02, Inst. 82-4 (Civil) (2010) (modified).

1

<u>**CLOSING INSTRUCTION NO.11.4**</u>

2

**"IN CONNECTION WITH" -- ADDITION TO DEFINITION**

3

4      Where the fraud alleged involves public dissemination in a document such as a press

5 release, annual or quarterly report, investment prospectus or other such document on which an

6 investor would presumably rely, the "in connection with" requirement is generally met by proof

7 of the means of dissemination and the materiality of the misrepresentation or omission.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27      <u>**Authority for Closing Instruction No. 11.4**</u>

28      *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CLOSING INSTRUCTION NO. 11.5**</u>

**ACCURACY OF FINANCIAL STATEMENTS -- PRESUMPTION**

You are to presume that financial statements included in Forms 10-K and 10-Q which were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP") are misleading and inaccurate.

<u>**Authority for Closing Instruction No. 11.5**</u>

Regulation S-X, § 210.4-01(a).  *See also SEC v. Caserta*, 75 F. Supp. 2d 79, 90 (E.D.N.Y. 1999).

08cv1620-WQH-RBB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CLOSING INSTRUCTION NO. 11.6</u>

**KNOWINGLY -- DEFINED**

A defendant acts knowingly when <u>the</u> <u>defendant</u> makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.  A defendant acts knowingly if <u>the</u> <u>defendant</u> omits to disclose information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.

Reckless means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

<u>Authority for Closing Instruction No. 11.6</u>

<u>Manual of Model Civil Jury Instructions for the Ninth Circuit</u>, 2007 Edition, Section 18.3 (modified).

1

## CLOSING INSTRUCTION NO. 11.7

2

### AIDING AND ABETTING -- SECTION 13(a) --

3

### FILING FALSE PERIODIC REPORTS

4

5       Plaintiff SEC also claims that the defendant aided and abetted Island Pacific's violations

6   of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13, by causing the filing

7   of false reports with the SEC.

8       Companies must file periodic reports with the SEC, including annual and quarterly

9   reports.  Section 13(a) and Rules 13a-1 and 13a-13 require that companies make those reports

10  factually accurate and not omit information that would otherwise make the information in the

11  reports not misleading.  Rule 12b-20 provides that in addition to the information expressly

12  required to be included in a statement or report, the company shall add such further material

13  information as may be necessary to make the required statements, in the light of the

14  circumstances under which they are made, not misleading.  I have previously instructed you on

15  what material means.  It has the same meaning here.

16      There is no requirement that the company have acted knowingly or recklessly to violate

17  these provisions.

18      To prove its claim of aiding and abetting, the SEC must establish by a preponderance of the

19  evidence that:

20      1.      Island Pacific committed one or more violations of Section 13(a) of the Exchange

21              Act and Rules 12b-20, 13a-1, 13a-13.  This may be established by showing that any

22              one of Island Pacific's employees or officers, including the defendant, committed

23              the violative acts;

24      2.      The defendant had knowledge of the primary violation and of his role in furthering

25              it; and

26      3.      The defendant provided substantial assistance in the primary violation.

27      Inaction may be a form of "substantial assistance" if you find that the silence of the

28  defendant was intended to aid Island Pacific in committing the violations.

1

**<u>Authority for Closing Instruction No. 11.7</u>**

2

Section 13(a) of the Securities Act of 1934, 15 U.S.C. § 78m(a); Rules 12b-20, 13a-1,

3

and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 13a-13.  Section 20(e) of the Securities

4

Exchange Act of 1934, 15 U.S.C. § 78t(e).  *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2002).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CLOSING INSTRUCTION NO. 11.8**

2

**RULE 13a-14 OF THE EXCHANGE ACT -- FALSE CERTIFICATION VIOLATIONS**

3

4          Plaintiff SEC also claims that the defendant violated SEC Rule 13a-14 by signing false

5    certifications included with Island Pacific's 2004 second and third quarter Forms 10-Q.

6          As I previously instructed you, Section 13(a) requires companies to file periodic reports

7    with the SEC, including quarterly reports.  Rule 13a-14 requires that the chief financial officer of

8    the company sign a form certifying that the report fully complies with the requirements of the

9    Exchange Act and fairly presents, in all material respects, the financial condition and results of

10    operations of the company.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Authority for Closing Instruction No. 11.8**

27          Section 13(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(a); Rule 13a-14,

28    17 C.F.R. § 240.13a-14.

## CLOSING INSTRUCTION NO. 11.9

### NO NEED TO CONSIDER REMEDIES

Your job is to determine whether the defendant is liable for violating the federal securities laws.  It will be my job to decide what relief, if any, should be awarded against him if you find him liable.  In considering whether the defendant is liable, you should not speculate as to what relief I might award.

### Authority for Instruction No. 11.9

*Tull v. United States*, 481 U.S. 412, 425 (1987) ("the Seventh Amendment required that petitioner's demand for a jury trial be granted to determine his liability, but that the trial court and not the jury should determine the amount of penalty, if any"); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (no right to jury trial in case where relief sought was a permanent injunction and disgorgement).

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

[X]    U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th
       Floor, Los Angeles, California 90036-3648

       Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On December 10, 2010, I caused to be served the document entitled **SUPPLEMENTAL JURY
INSTRUCTIONS PROPOSED BY PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION** on all the parties to this action addressed as stated on the attached service list:

[ ]    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and
       mailing today following ordinary business practices.  I am readily familiar with this
       agency's practice for collection and processing of correspondence for mailing; such
       correspondence would be deposited with the U.S. Postal Service on the same day in the
       ordinary course of business.

       [ ]    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I
              personally deposited with the U.S. Postal Service.  Each such envelope was
              deposited with the U.S. Postal Service at Los Angeles, California, with first class
              postage thereon fully prepaid.

       [ ]    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly
              maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles,
              California, with Express Mail postage paid.

[ ]    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of
       the addressee as stated on the attached service list.

[ ]    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United
       Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a
       facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles,
       California.

[ ]    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the
       electronic mail address as stated on the attached service list.

[X]    **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF
       system, which effects electronic service on counsel who are registered with the CM/ECF
       system.

[ ]    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was
       reported as complete and without error.

       I declare under penalty of perjury that the foregoing is true and correct.


Date: __December 10, 2010_____          __/s/ Karen Matteson_____
                                             Karen Matteson

- 28 -

08cv1620-WQH-RBB

**SEC V. RETAIL PRO, INC., et al.**

**United States District Court – Southern District of California**
**Case No. 3:08-cv-01620-WQH-RBB**
**(LA-3093)**

SERVICE LIST


Michael A. Piazza, Esq.
Wayne Gross, Esq.
Lindsay A. Ayers, Esq.
Greenberg Traurig LLP
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Email:  piazzam@gtlaw.com
Email:  grossw@gtlaw.com
Email:  ayersl@gtlaw.com
*Attorneys for Defendant Ran H. Furman*

08cv1620-WQH-RBB