# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br>RETAIL PRO, INC. (fka Island Pacific, Inc.), BARRY M. SCHECHTER, RAN H. FURMAN, and HARVEY BRAUN,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 08cv1620-WQH-RBB<br><br>ORDER |

HAYES, Judge:

　　The matter before the Court is the Motion for Directed Verdict, filed by Defendant Ran H. Furman. (ECF No. 143).

**I.　Background**

　　On September 4, 2008, Plaintiff Securities and Exchange Commission ("SEC") filed a Complaint in this Court. (ECF No. 1). The Complaint alleged the following claims against Furman: (1) fraud in connection with the purchase or sale of securities pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; (2) aiding and abetting issuer reporting violations pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), and Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13; (3) record-keeping violations pursuant to Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A) and Rule 13b2-1 thereunder; (4) misrepresentations to accountants pursuant to Exchange Act Rule 13b2-2, 17 C.F.R. §

240.13b2-2; (5) internal control violations pursuant to Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5); and (6) false certification violations pursuant to Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14.

Following the Court's November 18, 2009 Order granting in part and denying in part Plaintiff's motion for summary judgment (ECF. No. 47), the following claims remained to be tried against Furman: (1) Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (2) aiding and abetting Island Pacific's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder; and (3) Exchange Act Rule 13a-14.

On February 15, 2011, a jury trial commenced as to the SEC's remaining claims against Furman. (ECF No. 136).

On February 23, 2011, after the close of the SEC's case, Furman filed the Motion for Directed Verdict. (ECF No. 143).

On February 25, 2011, the jury returned a unanimous Verdict, finding the following: "Furman violate[d] Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder"; "Furman aid[ed] and abet[ted] one or more violations by Island Pacific of Section 13(a) of the Securities Exchange Act of 1934 and Rules 12b-20, 13a-1, and 13a-13 promulgated thereunder"; and "Furman violate[d] Rule 13a-14 promulgated under the Securities Exchange Act of 1934." (ECF No. 147 at 1-2).

On March 4, 2011, the SEC filed an opposition to the Motion for Directed Verdict and a Motion for Relief, accompanied by a proposed judgment and proposed findings of fact and conclusions of law.[1] (ECF Nos. 160, 161).

On March 25, 2011, Furman filed a reply in support of the Motion for Directed Verdict, and objections and responses to Plaintiff's proposed findings of fact and conclusions of law. (ECF Nos. 168, 170).

**II.   Contentions of the Parties**

Furman contends that, pursuant to Federal Rule of Civil Procedure 50(a)(1), a directed verdict in Furman's favor should be entered as to each of the three claims against Furman at

---

[1] The Court rules on the Motion for Relief in a separate order.

issue in the trial. With respect to the first claim, Furman contends: "Directed verdict must be granted on the SEC's 10(b) claim because there is no evidence from which a jury could conclude that Furman knew that any of his representations regarding the License or Sublicense Agreements was false or that he was reckless as to the truth or falsity of any such representation." (ECF No. 143 at 3). With respect to the second claim, Furman contends: "Directed verdict must be granted on the SEC's aiding and abetting claim because there is no evidence from which a jury could conclude that Furman had actual knowledge of any underlying violation by Island Pacific." *Id.* at 8. With respect to the third claim, Furman contends: "Directed verdict must be granted on the SEC's Rule 13a-14 claim because there is no evidence from which a jury could conclude that Furman's certifications were false in light of his knowledge." *Id.* at 9. Furman also "reaffirms his objection that Rule 13a-14 is not a separate cause of action." *Id.* at 10 n.6.

The SEC contends that Furman's motion should be denied because the jury's verdict is supported by substantial evidence. The SEC contends:

> First, [Furman's] motion contains an incomplete and one-sided presentation of the evidence, while ignoring the substantial evidence that supports the jury's verdict, even though all inferences are to be drawn in the Commission's favor. Among other things, he ignores key emails and exhibits that evidence his scienter, as well as key admissions he himself made. Second, Furman ignores the law: In effect, he asks this Court to reweigh the evidence (giving certain of his own testimony the most weight) and also to consider the credibility of witnesses (assessing certain of his own testimony as the most credible). But, these are exclusive functions of the jury, and a court cannot substitute its view of the evidence – or, for that matter, the moving party's view of the evidence – for that of the jury when deciding a Rule 50 motion.

(ECF No. 161 at 6).

**III.   Standard of Review**

Motions for a directed verdict, known as judgment as a matter of law, are governed by Federal Rule of Civil Procedure 50. A court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law must be denied if there is substantial evidence to support a jury verdict. *See Wallace v. City of San Diego*, 479

1  F.3d 616, 624 (9th Cir. 2007) ("A jury's verdict must be upheld if it is supported by substantial
2  evidence."). "Substantial evidence is such relevant evidence as reasonable minds might accept
3  as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions
4  from the evidence." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994); *see also*
5  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) ("'[S]ubstantial
6  evidence' ... is such relevant evidence as reasonable minds might accept as adequate to support
7  a conclusion.").

8  "In making this determination, the court must not weigh the evidence, but should simply
9  ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion."
10 *Wallace*, 479 F.3d at 624 (citation omitted); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
11 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of
12 legitimate inferences from the facts are jury functions, not those of a judge, whether he is
13 ruling on a motion for summary judgment or for a directed verdict."). "While the court must
14 review the entire evidentiary record, it must disregard all evidence favorable to the moving
15 party that the jury is not required to believe. The evidence must be viewed in the light most
16 favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that
17 party." *Wallace*, 479 F.3d at 624 (citation omitted). "Judgment as a matter of law may be
18 granted only where, so viewed, the evidence permits only one reasonable conclusion, and that
19 conclusion is contrary to the jury's verdict." *Id.* (citations omitted).

20 **IV.   Discussion**

21 The jury found against Furman as to each of the three claims at issue: (1) Section 10(b)
22 of the Exchange Act of 1934 and Rule 10b-5 thereunder; (2) aiding and abetting one or more
23 violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13
24 thereunder; and (3) Exchange Act Rule 13a-14. (ECF No. 147).

25 **A.    Section 10(b) and Rule 10b-5**

26 Section 10(b) is "the central antifraud provision of the Securities Exchange Act." *SEC*
27 *v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996). Section 10(b) makes it unlawful "for any person,
28 directly or indirectly":

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 further defines the conduct prohibited under Section 10(b), making it unlawful:

> (a) [t]o employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

"[T]he SEC must prove four elements to establish a misrepresentation violating Rule 10b-5...: (1) a material misrepresentation, (2) in connection with the purchase or sale of a security, (3) scienter, [and] (4) use of the jurisdictional means...." *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993) (citations omitted); *see also SEC v. Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007) ("Section 10(b) of the 1934 Act, and Rule 10b-5 forbid making [1] a material misstatement or omission [2] in connection with the offer or sale of a security [3] by means of interstate commerce.... Violations of ... Section 10(b) and Rule 10b-5 require scienter.").

Furman challenges the sufficiency of the evidence as to the scienter element. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). In the Section 10(b) context, scienter requires "proof that the defendant acted knowingly or recklessly." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc). Recklessness is defined as:

> a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* at 1569 (quotation omitted). "Recklessness satisfies the scienter requirement only 'to the

extent that it reflects some degree of intentional or conscious misconduct.'" *SEC v. Rubera*, 350 F.3d 1084, 1094-95 (9th Cir. 2003) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999)). "Scienter can be established by direct or circumstantial evidence." *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996) (citation omitted).

At trial, the SEC presented substantial evidence that Furman, as Chief Financial Officer ("CFO") of Island Pacific, was aware of, and participated in, significantly altering the License Agreement with QQQ Systems Pty Limited ("QQQ") after September 30, 2003, which was the end of Island Pacific's fiscal second quarter 2004. *See, e.g.*, Trial Exs. 309, 384, 385-88, 595-96, 616; Dietzler testimony, Trial Tr. Vol. 4 at 111, 115-16. The SEC presented substantial evidence that the only version of the License Agreement agreed to by Shaun Rosen, on behalf of QQQ, was Trial Exhibit 405, which provided for payment by QQQ of a onetime licensing fee of $3,250,000 <u>or</u> the payment of royalties for 36 months. As Furman conceded, recognition of revenue would not have been appropriate under this version of the agreement because of the alternative payment provisions, which caused the fee not to be fixed or determinable. The SEC produced substantial evidence that the only version of the License Agreement that Furman signed on behalf of Island Pacific was Exhibit 616, which provided for payment by QQQ of a onetime licensing fee of $3,250,000 and the payment of royalties. *See* Trial Ex. 616; *see also* Trial Ex. 309 at 1 (October 3, 2003 e-mail wherein Furman stated that he booked "$3.25mm [revenues] for QQQ"); Rosen Dep. at 73 (Rosen did not recall ever agreeing to pay $650,000 for Island Pacific's Direct software).

The SEC presented substantial evidence that Furman knew or must have been aware that it was improper for Island Pacific to record revenue of $3.9 million in the second quarter of fiscal 2004 under both Generally Accepted Accounting Principles ("GAAP") and Island Pacific's own revenue recognition policy because there was neither a signed license agreement nor "persuasive evidence of an arrangement" on September 30, 2003 for $3.9 million. (Trial Ex. 1505 ¶ .08 (statement of position 97-2); *see also* Trial Ex. 1502 at 15 (Island Pacific's revenue recognition policy)). The SEC supported this evidence with expert testimony regarding revenue recognition.

The SEC produced substantial evidence that Furman knew or must have known that recognizing $3.9 million in revenue in the second quarter of fiscal 2004 was improper for the additional reason that collectability was not probable. For example, the SEC produced evidence of Furman's failure to perform due diligence as to QQQ; the lack of a prior payment history between Island Pacific and QQQ; and Shaun Rosen's testimony that he did not recall ever receiving an invoice from Island Pacific, and QQQ did not have the cash available to make a $3.9 million payment if had received an invoice. The SEC supported this evidence with expert testimony.

The SEC produced substantial evidence that Furman directed Island Pacific to record a second transaction with QQQ on its financial statements for the third quarter (ended December 31, 2003) pursuant to which Island Pacific agreed to purchase the sublicense to market QQQ's Pyramid software for $3.9 million, which would offset the $3.9 million receivable issued to QQQ the prior quarter. The SEC produced substantial evidence that Furman knew that the third quarter Sublicense Agreement was not finalized at quarter end. *See, e.g.*, Trial Exs. 226, 389, 390, 408, 453; Furman testimony, Trial Tr. Vol. 2 at 169-72, 177-78; Dietzler testimony, Trial Tr. Vol. 4, at 122-24. The SEC produced substantial evidence that Furman knew that it was improper to record the Sublicense Agreement in the third quarter under both GAAP and Island Pacific's own revenue recognition policy. The SEC supported this evidence with expert testimony regarding revenue recognition.

The SEC produced substantial evidence that Island Pacific contract administrator Joseph Dietzler, who reported directly to Furman, repeatedly expressed concerns to Furman regarding the QQQ transactions. *See, e.g.*, Dietzler testimony, Trial Tr. Vol. 4 at 118-26. The SEC produced substantial evidence that Furman refused to read a memo Dietzler wrote memorializing his concerns, and that Dietzler's "expressions of [his] concerns to Ran Furman were falling on deaf ears." *Id.* at 124-25. On February 4, 2004, Dietzler sent an e-mail to Furman and others explaining why "certain transactions involving the company QQQ appear to be structured in a manner that is intended to inflate revenues for the purpose of boosting the corporation's share price." Trial Ex. 226 at 1. The SEC produced substantial evidence that

1 Furman understood at the time that Dietzler had been alleging potential fraud.[2]  The SEC
2 produced substantial evidence that Furman terminated Dietzler the following day.

3         The SEC presented substantial evidence that Furman failed to provide Island Pacific's
4 outside auditors with all material information, including Dietzler's e-mail and the information
5 and concerns contained therein, the version of the License Agreement signed by Rosen, the
6 version of the License Agreement signed by Furman, and the documents showing that neither
7 QQQ transaction was finalized by the end of the quarter in which the transaction was reported.
8 *See, e.g.*, Aubury testimony, Trial Tr. Vol. 1 at 68, 78-86; Furman testimony, Trial Tr. Vol. 2
9 at 179. The SEC presented substantial evidence that Furman knowingly signed materially false
10 management representation letters to the auditors, including: (1) a November 11, 2003,
11 management representation letter in which Furman represented that Island Pacific's financial
12 statements were reported in accordance with GAAP; (2) a February 12, 2004 management
13 representation letter in which Furman represented that Island Pacific's financial statements
14 were reported in accordance with GAAP and—eight days after receiving Dietzler's e-
15 mail—that management had "no knowledge of any allegations of fraud or suspected fraud
16 affecting the company received in communications from employees, [or] former employees";
17 and (3) a June 11, 2004 management representation letter in which Furman represented that
18 Island Pacific's financial statements were reported in accordance with GAAP and that he had
19 no knowledge of any allegations of fraud or suspected fraud received from employees, and that
20 a QQQ transactional history provided to the auditors was accurate. Trial Ex. 333 at 2; *see also*
21 Trial Exs. 322, 313, 504. The SEC presented substantial evidence that Furman knowingly
22 withheld material information from the auditors. Accordingly, the jury was entitled to reject
23 Furman's defense of reliance on professional assistance. *See Provenz*, 102 F.3d at 1491 ("If
24 it is true that defendants withheld material information from their accountants, defendants will
25 not be able to rely on their accountant's advice as proof of good faith.") (citation omitted); *see*
26 *also SEC v. Goldfield Deep Mines Co.*, 758 F.2d 459, 467 (9th Cir. 1985) (in order to establish

---

28     [2] The jury was entitled to find Furman's explanation of his earlier deposition testimony to be not credible. *See* Furman testimony, Trial Tr. Vol. 2 at 189-90.

1 the defense of good faith reliance on the advice of professionals, a defendant must show he
2 "made complete disclosure" to the professional) (citation omitted); *cf. id.* ("If a company
3 officer knows that the financial statements are false or misleading and yet proceeds to file
4 them, the willingness of an accountant to give an unqualified opinion with respect to them does
5 not negate the existence of the requisite intent or establish good faith reliance.") (quotation
6 omitted).[3]

7 The SEC produced substantial evidence that Furman drafted or was responsible for the
8 means by which Island Pacific's fiscal 2004 second and third quarter and annual financial
9 information was disseminated to the investing public (i.e., earnings press releases, scripts for
10 earnings conference calls, and Forms 10-Q and 10-K). The SEC produced substantial evidence
11 that Furman knew or must have known that this information materially misrepresented Island
12 Pacific's financial results and also contained material omissions. This evidence is sufficient
13 to support the jury's verdict that Furman acted with the scienter necessary to violate Section
14 10(b) and Rule 10b-5. *Cf. Provenz*, 102 F.3d at 1490 ("Not only have plaintiffs provided
15 documentary evidence that suggests that defendants may have recognized revenue before it
16 was earned, they also provided expert testimony in support of their contentions. This evidence
17 is sufficient to overcome summary judgment [as to a Section 10(b) and Rule 10b-5 claim].").
18 Although not challenged in the Motion for Directed Verdict, the Court further finds that
19 substantial evidence supports the jury's verdict that each of the other elements of the SEC's
20 Section 10(b) and Rule 10b-5 claim were satisfied.

21 Furman presented evidence at trial—primarily in the form of his own testimony—to
22 counter much of the evidence discussed above. However, the jury was entitled to find
23 Furman's testimony on these points to be not credible in light of the substantial evidence

---

[3] Even if Furman had established each of the required elements of good faith reliance on professionals, such reliance does not operate as an automatic defense to the SEC's claims. *Cf. Goldfield Deep Mines Co.*, 758 F.2d at 467 ("Even if appellants had established a claim of [good faith] reliance [on professionals], such reliance does not operate as an automatic defense, but is only one factor to be considered in determining the propriety of injunctive relief.") (quotation omitted); *cf. also United States v. Bush*, 626 F.3d 527, 540 (9th Cir. 2010) ("[A]dvice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent....").

presented by the SEC and the reasonable inferences which could be made from the SEC's evidence. *Cf. Wallace*, 479 F.3d at 624 (in ruling upon a Rule 50 motion for judgment as a matter of law, "[w]hile the court must review the entire evidentiary record, it must disregard all evidence favorable to the moving party that the jury is not required to believe") (citations omitted). Even if the jury believed Furman's testimony that he relied upon representations of others at Island Pacific, the jury was entitled to find that Furman possessed the requisite scienter for a Section 10(b) and Rule 10b-5 violation. *Cf. Gebhart v. SEC*, 595 F.3d 1034, 1044 (9th Cir. 2010) ("Substantial evidence ... supports the SEC's finding of recklessness [sufficient to establish a Section 10(b) and Rule 10b-5 claim]. The Gebharts represented that the MHP notes were a good investment, that they were secured by recorded trust deeds and that in the event of a problem investors would be able to get their investments back because the parks were not heavily leveraged. The Gebharts based these statements on representations by [a co-worker] and conducted no meaningful independent investigation to confirm the truth of their representations. It was therefore reasonable for the SEC to infer that the Gebharts were consciously aware that they lacked sufficient information for their statements.") (citation omitted).

The Motion for Directed Verdict is denied as to the Section 10(b) and Rule 10b-5 claim.

**B.     Aiding and Abetting**

The jury found that Furman aided and abetted one or more violations by Island Pacific of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 promulgated thereunder. "In order to find that [an individual defendant] aided and abetted [a company]'s violation of federal securities laws, it must be found that: (1) [the company] violated the relevant securities laws; (2) [the individual defendant] had knowledge of the primary violation and of his or her own role in furthering it; and (3) [the individual defendant] provided substantial assistance in the primary violation." *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003) (citations omitted).

Issuers of securities registered pursuant to Section 12 of the Exchange Act are required to file annual Forms 10-K and quarterly Forms 10-Q with the SEC. *See* Section 13(a) of the

Exchange Act, 15 U.S.C. § 78m(a), and Rules 13a-1 and 13a-13 thereunder, 17 C.F.R. §§ 240.13a-1 & 240.13a-13; *see also* 17 C.F.R. § 240.12b-20 ("In addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading."). These provisions require, *inter alia*, that the reports filed be prepared in conformity with GAAP. *See Ponce*, 345 F.3d at 735.

The SEC presented substantial evidence of a primary violation of Section 13(a) and Rules 12b-20, 13a-1, and 13a-13. As discussed above, the SEC presented substantial evidence that Island Pacific's fiscal 2004 second and third quarter and annual reports were not prepared in conformity with GAAP. As discussed above, the SEC presented substantial evidence that Furman substantially assisted in the primary violation, and that Furman knew of the primary violation and of his role in furthering it. The jury was entitled to find Furman's testimony to the contrary to be not credible. The evidence that other officers and/or shareholders of Island Pacific approved of Furman's actions is not sufficient to warrant overturning the jury's finding that each of the elements of aiding and abetting liability were satisfied as to Furman.

The Motion for Directed Verdict is denied as to the aiding and abetting claim.

### C. Rule 13a-14

Rule 13a-14 provides: "Each report ... filed on Form 10-Q [or] Form 10-K ... under Section 13(a) of the Act ... must include certifications.... Each principal executive and principal financial officer of the issuer ... must sign a certification." 17 C.F.R. § 240.13a-14(a).[4] Among the certifications made by Furman in the Forms 10-Q and the Form

---

[4] As the Court ruled at the final pretrial conference on February 11, 2011, the Court holds that Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1), enables the SEC to bring a claim to enforce Rule 13a-14. *See SEC v. Brown*, 740 F. Supp. 2d 148, 164-65 (D.D.C. 2010) ("[T]he SEC's claim to enforce Rule 13a-14 states a valid cause of action."); *see also SEC v. Fuhlendorf*, No. C09-1292, 2011 WL 999221, at *9 (W.D. Wash. Mar. 17, 2011) (agreeing with *Brown*); *SEC v. Das*, No. 8:10cv102, 2010 WL 4615336, at *10 (D. Neb. Nov. 4, 2010) (agreeing with *Brown*); *SEC v. Indigenous Global Dev. Corp.*, No. C-06-5600, 2008 U.S. Dist. LEXIS 50434 (N.D. Cal. June 30, 2008) (granting summary judgment in favor of the SEC for a defendant's violation of Rule 13a-14); *but see SEC v. Black*, No. 04C7377, 2008 WL 4394891, at *16-17 (N.D. Ill. Sept. 24, 2008) ("[A] false ... certification does not state an

1  10-K was a certification that, based on his knowledge, the Forms 10-Q and Form 10-K fully
2  complied with the requirements of the Exchange Act and fairly presented, in all material
3  respects, Island Pacific's financial condition and results of operations.  As discussed above,
4  the SEC presented substantial evidence that Furman knew at the time that his certifications
5  were false.

6  The Motion for Directed Verdict is denied as to the Rule 13a-14 claim.

### V. Conclusion

IT IS HEREBY ORDERED that the Motion for Directed Verdict is DENIED. (ECF No. 143).

DATED: June 23, 2011

**WILLIAM Q. HAYES**
United States District Judge

---

28  independent violation of the securities law."); *SEC v. Mozilo*, No. CV09-3994, 2010 WL 3656068, at *21 (C.D. Cal. Sept. 16, 2010) (agreeing with *Black*).